# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

**MATTHEW ROSSIGNOL**,
    Plaintiff

vs.

**UNITED STATES OF AMERICA**,
    Defendant

NO. _____

## ORIGINAL COMPLAINT

Plaintiff MATTHEW ROSSIGNOL brings this complaint under the Federal Tort Claims Act, 28 U.S.C. § 2674. Plaintiff complains of the United States and would show the following.

## PARTIES

1.1. This is a medical malpractice case that arises out of bodily injuries caused by agents and employees of the United States at the Harry S. Truman Memorial Veterans Hospital and the General Leonard Wood Army Community Hospital.

1.2. Plaintiff is a veteran, Matthew Rossignol. Mr. Rossignol resides in Plato, Missouri within the jurisdiction of this Court.

**1.1.** Defendant is United States of America, its officers, agents, employees, and representatives.

# JURISDICTION, SERVICE & VENUE

2.1.	This Federal District Court has jurisdiction because this action is brought under 28 U.S.C. § 2671–80, commonly known as the Federal Tort Claims Act.

2.2.	The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the acting United States Attorney Teresa A. Moore, United States Attorney for the Western District of Missouri by certified mail, return receipt requested at her office:

> The United States Attorney's Office
> ATTN: Civil Process Clerk
> Charles Evans Whittaker Courthouse
> 400 East 9th Street
> Room 5510
> Kansas City, MO 64106

2.3.	Service is also affected by serving a copy of the Summons and Complaint on Merrick B. Garland, Attorney General of the United States, by certified mail, return receipt requested at:

> The Attorney General's Office
> ATTN: Civil Process Clerk
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

2.4.	Venue is proper in this judicial district under 28 U.S.C. § 1402(b) because the United States of America is a defendant and the acts and omissions complained of in this lawsuit occurred in this judicial district.

## AGENCY

3.1. This case is commenced and prosecuted against the United States of America to and in compliance with Title 28 U.S.C. §§ 2671–80, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. § 2674 because the personal injuries and resulting damages of which the complaint is made were proximately caused by the negligence, wrongful acts and/or omissions of employees and/or agents of the United States of America working for the Veterans Affairs, while acting within the scope of their office, employment, and/or agency under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual.

3.2. The United States Department of Veterans Affairs is an agency of the United States of America.

3.3. The United States of America, through its agency, Veterans Affairs, at all times material to this lawsuit, owned, operated, and controlled the Harry S. Truman Memorial Veterans Hospital and the General Leonard Wood Army Community Hospital, and staffed it with its agents, servants, or employees.

3.4. At all times material to this lawsuit, including 2015 to 2019, providers at Harry S. Truman Memorial Veterans Hospital and the General Leonard Wood Army Community Hospital were acting within the course and scope of their employment when providing treatment to Mr. Rossignol.

3.5. From 2015 to 2019, the Harry S. Truman Memorial Veterans Hospital and the General Leonard Wood Army Community Hospital provided care and treatment to Mr. Rossignol. Mr. Rossignol was a patient of the Harry S. Truman Memorial Veterans Hospital and the General Leonard Wood Army Community Hospital and its providers had a doctor-patient relationship with Mr. Rossignol.

## JURISDICTIONAL PREREQUISITES

4.1. Pursuant to 28 U.S.C. §§ 2672 and 2675(a), the claims set forth here were filed with and presented administratively to the Department of Veterans Affairs on May 13, 2020. On March 15, 2021, the VA denied via certified mail the administrative claim. Plaintiff requested reconsideration of the VA's denial on March 30, 2021. The claim was denied a second time on November 2, 2021.

4.2. Accordingly, Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this suit.

## FACTS

5.1. From May 2015 to August 2018, Mr. Rossignol received his annual examinations at the Harry Truman Memorial Veterans Hospital. On May 22, 2015, Mr. Rossignol, then 35 years old, presented for the first of several annual examinations.

5.2. On May 22, 2015, Mr. Rossignol was negligently prescribed a 90-day supply of the drug Naproxen, a nonsteroidal anti-inflammatory (NSAID). NSAIDs are associated with acute renal failure and should not be taken for 90 days or any prolonged period of time, especially without monitoring for kidney disease. In addition to the negligent prescription for a 90 day supply, Mr. Rossignol was given another Naproxen prescription on July 31, 2017 for a 30-day supply, refillable 11 times until August 1, 2108, and again a 30-day supply, refillable 11 times on August 3, 2018 until August 4, 2019. That means Mr. Rossignol had a monthly prescription for Naproxen for two years straight.

5.3. NSAIDs are not intended to be prescribed for two consecutive years and it is below the standard of care even for a healthy patient. By 2017, Mr. Rossignol's BUN values were abnormally high at 32 and rose even higher to 84 in 2018. It was a breach of the standard of care to keep Mr. Rossignol on NSAIDs with abnormally high BUN levels. These negligent prescriptions for NSAIDS, more likely than not, directly and proximately caused Mr. Rossignol's dramatic and acute kidney deterioration which went undiagnosed and untreated.

5.4. Mr. Rossignol continued to return for annual exams, on April 29, 2016; July 14, 2017; and August 3, 2018. These exams revealed that over time, Mr. Rossignol had many objective signs and symptoms of kidney damage, most likely caused by excessive NSAID prescriptions. But Government's providers failed to notice or otherwise act on these signs and

symptoms, so he was not timely referred to a urologist or nephrologist. This led to a failure to treat this condition until it was far too late.

5.5. By the time Government providers finally noticed and began treatment for his kidney damage, Mr. Rossignol was suffering from end-stage renal failure. His blood urea nitrogen (BUN) tests became abnormally high, suggesting that his kidneys were not functioning properly. A normal BUN range is 7-20, but Mr. Rossignol's BUN values increased from 17 in 2015, to 28 in 2016, to abnormal levels of 32 in 2017, and 84 in 2018.

5.6. On January 5, 2019, Mr. Rossignol presented to the General Leonard Wood Army Community Hospital ER with complaints of 3 episodes of loose dark stools, feeling fatigued and bloated for 1-2 months. Mr. Rossignol underwent a CT of the abdomen and pelvis, which showed nonspecific increased fluid within the small bowel and a non-obstructing 3mm left renal stone. Mr. Rossignol was immediately admitted to the ICU. Upon admission to the ICU, he was diagnosed with an upper GI bleed, severe symptomatic anemia, and acute renal failure. Providers noted his significant lab abnormalities at this time.

5.7. Mr. Rossignol was transferred the next day for evaluation of high creatinine levels and the GI bleed. He was assessed to be in acute renal failure, severely and critically ill and was admitted to the ICU again. It was noted that he had no history of being on dialysis. He continued to have hyperkalemia, elevated creatinine and BUN and metabolic acidosis.

5.8. Nephrology was consulted for evaluation of acute kidney injury with possible chronic kidney disease. The nephrologist, Dr. Abebe, concluded that Mr. Rossignol was likely suffering from chronic kidney disease. Wide gap metabolic acidosis and hyperkalemia related to acute kidney injury were noted. He was recommended to undergo further esophagogastroduodenoscopy (EDG) and a colonoscopy. It was further noted that he had poorly controlled hypertension. His labs revealed he was at high risk of kidney failure.

5.9. Mr. Rossignol was finally discharged with treatment for severe symptomatic anemia and PRBC transfusion, with a component of acute blood loss anemia and anemia of chronic disease. He was diagnosed with end-stage renal disease requiring renal replacement therapy.

5.10. Six months later, on June 2, 2019, he returned to the ER with complaints of abdominal pain that started the previous night. A CT scan of the abdomen and pelvis showed mild atrophy and contracted gall bladder. He was discharged on June 6, 2019. The discharge summary note states that he was admitted and treated for peritoneal dialysis-associated peritonitis.

5.11. Despite regular examinations and obvious signs and symptoms of renal abnormalities and hypertension, Mr. Rossignol's conditions were uncontrolled, untreated, and ignored for years. There was no nephrology consult recommended and abnormal renal function continued until he was finally diagnosed in January 2019 with end stage renal failure requiring peritoneal dialysis based on the abnormal renal function tests and poorly managed hypertension.

5.12. Had Mr. Rossignol's government treaters provided him with the proper dosage of NSAIDs, more likely than not he would not have developed extensive kidney disease. Had government providers properly diagnosed Mr. Rossignol's kidney disease, and recognized that he needed earlier treatment, more likely than not, he would not be facing end-stage renal disease, a life-long, permanent disabling condition or require multiple renal transplants. Government providers negligently caused Mr. Rossignol's acute kidney disease to dramatically worsen and then failed to diagnose or timely treat the condition that they caused. Mr. Rossignol has undergone the first of several kidney transplants that he will need over his lifetime as a result of government negligence. Had Mr. Rossignol's government treaters recognized that he needed earlier diagnosis and treatment, he would not be facing a life-long, permanent disabling condition or require multiple kidney transplants.

## CAUSES OF ACTION

6.1. Through its employees, agents, or servants, the Defendant United States of America, was negligent in one or more of the following respects:

(a) Negligently prescribing NSAIDs for two consecutive years to Mr. Rossignol;

(b) Negligently failing to timely and properly diagnose Mr. Rossignol;

(c) Negligently failing to timely and properly provide imaging for Mr. Rossignol;

(d) Negligently failing to timely and properly provide a nephrology consult for Mr. Rossignol;

(e) Negligently failing to timely and properly treat Mr. Rossignol;

(f) Negligently failing to timely and properly care for Mr. Rossignol; and

(g) Negligently failing to timely and properly evaluate Mr. Rossignol.

6.2. At all times relevant to this lawsuit, the officers, employees, agents, or representatives of the United States were negligent and caused the injuries and damages sustained by the Plaintiff.

## DAMAGES

7.1. Because of Defendant's negligence, Plaintiff has suffered, and continue to suffer, severe injuries, including past and future physical and mental pain and suffering; past and future medical, healthcare, and attendant care expenses; past and future physical disfigurement; past and future permanent physical impairment; loss of enjoyment of life; loss of earnings and earning capacity; and out of pocket expenses and other pecuniary losses. Such injuries are, in reasonable probability, permanent.

Plaintiff brings this suit to recover all damages cognizable under the applicable state and federal law resulting from the injuries to them.

7.2. Because of the negligence of the United States employee healthcare providers, Mr. Matthew Rossignol sustained damages and injuries including:

    (a) Reasonable and necessary past and future medical expenses;

    (b) Reasonable and necessary attendant, home health, and nursing care expenses;

    (c) Past loss of earnings;

    (d) Future loss of earning capacity;

    (e) Past and future physical impairment;

    (f) Past and future physical disfigurement;

    (g) Past and future physical pain and suffering; and

    (h) Past and future mental anguish.

In addition, Mr. Rossignol seeks recovery of all other damages to which he is entitled to under the applicable federal and state laws.

## RELIEF REQUESTED

8.1. Plaintiff requests that the United States be cited in terms of law to appear and answer this lawsuit. Upon final trial, Plaintiff seeks judgment against the United States for the amount of actual damages and for such other and different amounts that he shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all Court costs incurred in the prosecution of this lawsuit; and for such other relief, in law or equity, both general and special, to which the Plaintiff may show himself entitled to and to which the Court believes him deserving.

Respectfully Submitted,

/s/ Laurie Higginbotham
**LAURIE HIGGINBOTHAM**, *pro hac vice*
lhigginbotham@nationaltriallaw.com
Texas State Bar #50511759
**TOM JACOB**, *pro hac vice*
tjacob@nationaltriallaw.com
Texas State Bar #24069981
**STEVEN HASPEL**, *pro hac vice*
shaspel@nationaltriallaw.com
Texas State Bar #24109981
**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.**

7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

/s/ Michael Campbell
MICHAEL E. CAMPBELL, Bar No. 63745
2600 Forum Blvd., Ste. B1
Columbia, MO 65203
Telephone No. 573-607-1818
Fax No. 573-606-8670
mike.campbell@thomaslawoffices.com

Attorneys for the Plaintiff

# CERTIFICATE OF SERVICE & COMPLIANCE

By my signature below, I certify that a copy of this pleading, Plaintiffs' Motion, has been sent to the following on December 21, 2021 via the Court's CM/ECF notice system.

**TERESA A. MOORE**
ACTING U.S. ATTORNEY


/s/ Laurie Higginbotham
Laurie Higginbotham
WHITEHURST, HARKNESS,
BREES, CHENG, ALSAFFAR,
HIGGINBOTHAM, & JACOB P.L.L.C.